SOUTHERN PACIFIC COMPANY v. W. C. WELLINGTON.

Decided November 6, 1901.

**1.—Master and Servant—Negligence in Not Providing Rules—Proximate Cause—Contributory Negligence.**

Evidence in an action for personal injuries by a railroad employe, a carpenter working at the railroad yards and injured by the moving of cars therein while he was passing between them, held insufficient to warrant any recovery, because not showing that defendant company was guilty of any negligence in failing to provide further rules for protecting its employes there such as proximately caused the injury, and because showing that the injury was caused by the negligence of a fellow servant to which plaintiff's own negligence contributed.

**2.—Same—Rules of Master.**

The law requiring the master to prescribe rules for the orderly conduct of complicated business such as will protect the servant is not intended to protect servants against their own negligence and disobedience of the rules already prescribed, and the master is bound to guard against, by his rules, only such accidents and casualties as could reasonably be foreseen by him in the exercise of ordinary care and prudence.

**3.—Same—Proximate Cause.**

The servant, in order to recover on the ground of the absence of a rule, must show there was a necessity of such rule, and that its absence was the proximate cause of the injury.

Appeal from El Paso. Tried below before Hon. J. M. Goggin.

*Beall & Kemp* and *Baker, Botts, Baker & Lovett,* for appellants.

*Patterson & Buckler,* for appellees.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages in the sum of $10,000 for personal injuries, alleged to have been sustained by reason of the negligence of the company.

Appellee's second amended original petition, upon which this case was tried, after alleging that he was on the 28th day of April, 1891, in the employ of the company as a carpenter in the car shops of appellant in the city of El Paso, engaged in repairing its cars, alleged that the car shop was situated on its main track; that at the time appellant had another building in which was kept lumber and material necessary to be used in such repairing; that this building was separated from the main car shop by a switch and side track which ran between the main building of the car shops, and the one in which lumber and material necessary for repairs was stored; that, to procure lumber and other material, it was necessary for him and his coemployes that work in the main shop to cross the side track frequently during the day; that it was the duty of appellant to keep the side track, between the point where it was crossed by said employes, to procure and carry material from the storage to the main building, and the point west of where said side track connected with the main track, free from cars and objects which might obstruct the view of an employe crossing from one of said buildings to another, so that such employes in the car shop might cross with safety; that, on the day before, appellant's employes negligently left standing on the side track west of the crossing, a large number of freight cars, which obstructed the view between the points of crossing from one to the other of said buildings, and of connection of the side track with the switch on the main track; that said freight cars, on the 28th day of April, 1891, obstructing the view as before stated, were still standing on said side track, when appellee, in the discharge of the duties of his employment, was crossing the side track with lumber to be worked upon in the main car shop, the employes of appellant, negligently and without warning him, ran an engine from its main track upon the side track with great force against said freight cars left negligently standing thereon, or negligently caused the freight cars to be moved without notice or warning to him, whereby the freight cars were thrown back with great force upon the crossing over the side track while appellee was in the act of crossing the same from the building where the lumber was kept to the main shop, and he was caught between the freight cars and a flat car standing on the east side of said crossing, and greatly injured; that at the time the engine was run from the main track it was the duty of appellant, in the exercise of reasonable care for the protection of its employes, who were on or crossing the said track at that point, to provide means or establish rules for giving warning to such employes of the approach of cars or engine from the main to the side track, and to give warning to any of said employes at said crossing in case any of the cars upon the side track were being or about to be moved at or across said crossing; that appellant wholly failed to discharge these duties, and on account of such failure appellee was caught between the cars in the manner stated, and injured as aforesaid; that it was the duty of appellant to make provision for the warning of its employes in charge of engines and cars against coming in and upon said side track with the engines and other cars, and that appellant wholly

failed to make such provision or perform such duty, or take any reasonable precaution for appellee's protection, or the protection of any of the employes in said car shops.

As we have had no occasion to change our views upon a number of assignments of error raising questions which we fully considered when this case was before us on the first appeal (36 Southwestern Reporter, 1114), we deem it unnecessary in this statement to notice the pleadings of appellee raising such questions. Nor shall we, in our conclusions of fact, take any notice of the evidence upon the issues involved in such questions as we now deem further consideration of unnecessary.

In so far as appellee's pleadings are pertinent to the assignment of error which we shall consider in determining this appeal, they are pleas of (1) not guilty, (2) contributory negligence, (3) negligence of fellow-servants, (4) assumed risks, and (5) sufficient reasonable rules and regulations of warning and protection were made by appellant and known to the appellee.

The case was tried before a jury, and the trial resulted in a judgment in favor of the appellee for $5500, from which this appeal is prosecuted.

*Conclusions of Fact.*—The undisputed evidence shows that the appellee for several years prior to his injury had been employed as a carpenter in the car shops, situated in the city of El Paso, the buildings of which were located in reference to the main track running thereto and the side track, as described in his petition, the recitals of which are set out in our statement of his pleadings. And, for the purpose of determining the questions upon which our decision of this case will depend, it will be assumed that the evidence is sufficient to show that he was, from the time he was first employed to the date of his injury, the servant and employe while at work as a carpenter in and about said shop, of the Southern Pacific Company, and that such duties as are due from the master to a servant engaged in such work as appellee was when injured were due him from said company. For about five months before the injury appellee had been engaged at work as a carpenter for appellant within a few yards of the spot where he was hurt, and was well acquainted with the place, the location of the buildings and of the tracks, and knew the usages and methods of handling and moving engines and cars thereon. A rule of the company provided for the protection of its employes engaged in such work as appellee was when injured, which was printed on the time card daily furnished him, and of which he had full knowledge, is as follows: "If your duties require you to go around, under, or on the cars on any track, protect yourself with blue signals." The company, according to appellee's own witnesses, and the evidence of all the other witnesses upon the point, had a rule which required a blue flag at a car on its track which it did not want moved, as a signal that it would be dangerous to disturb such car; and appellee knew it was customary to put a flag on the car, where it was not expected to be disturbed while men were working on the track near it. "That flag," to use the language of one of the wit-

nesses of appellee, "signified that the car was not to be disturbed, or there was danger in the vicinity of that car. The appellee knew at the time he was injured that appellant at no time during his employment had any other rule for the protection of its employes engaged in service like his at its car shops in El Paso. He never at any time complained to the company of its failure to make any other rule for his protection while engaged in the duties of his employment, nor indicated to the company that the danger incident to his employment could be lessened by its promulgating some other rule.

At the time of the accident there was a flat car on the side track which had its trucks removed and was "jacked-up," and not in a condition to be moved. To the west of this flat car there was standing on the side track a string of five or six box cars, which had been left on the track the day before. Between this string of freight cars and the "jacked-up" flat car, there was a space of six or seven feet, left for appellant's employes in the shop to pass back and forth in the discharge of their employment. On the west end, i. e., the end farthest from the opening or passage way, there was a blue flag, put there for the purpose of giving warning to appellant's employes that the cars were not to be moved. The appellee in his testimony said that he saw this flag there a dozen times on the day of the accident and the day before, and that he knew it was there before he made the passage through the crossing; "that the blue flag was placed on the end of the last car for the purpose of protecting the men working in the yard. * * * If I put the flag up there, I am supposed to work below in perfect safety."

About noon on the day of the accident two time-freight cars were placed upon the same track west and near the end of the string of flat cars on which the blue flag was placed, as before stated, to have wheels placed under them, and the appellee at the time of the accident knew that these time-cars were there, and had been "wheeled," and were liable to be moved at any moment. About 1 o'clock on that day appellee went from a car he was working on across the side track, through the opening between the "jacked-up" flat car and the string of freight cars, to the material room, and got a sandboard, which was about 5 feet long, 3 inches thick, and 12 inches wide, placed the same upon his right shoulder with the edge up, so that it was between his head and the box car on the west side of the space between it and the flat car. Carrying the board in this way, he started to return across said track between said cars, without, as admitted by himself in his testimony, looking or listening or using his senses to discover or avoid danger from the moving of the car or cars on the west side (his right) of said space. While he was in the act of crossing, he was caught between said cars in the middle of the track, and thereby sustained the injuries complained of. There is no direct testimony showing how or by whom the string of freight cars, upon the end of which was displayed the blue flag, was moved from their position against the "jacked-up" flat car, catching appellee between it and the said moving cars. But the evidence shows that about the time appellee was

caught between the cars a switch engine, handled in obedience to the order of James Milam, appellant's yard master at El Paso, and appellee's fellow-servant, was run on the track to remove the two time-cars which had been left there to be "wheeled;" and the facts and attending circumstances fully warrant the conclusion that in attempting to move the time-cars, they were pushed against the car bearing the blue flag, and impelled the string of freight cars toward and against the jacked-up box car, whereby appellee was caught and injured.

*Conclusions of Law.*—In disposing of this appeal we deem it only necessary to consider the questions, raised by a number of assignments, whether the testimony tends to show that appellant was negligent in failing to prescribe and enforce such rules and regulations in the conduct of its business as would have been reasonably sufficient to have prevented the occurrence of the accident culminating in appellee's injury, and if so negligent, whether such negligence was the proximate cause of the injury.

The rule is well settled that a "master who employs servants in a dangerous or complicated business is personally bound to prescribe rules reasonably sufficient for its orderly and safe management, and to keep his servants informed of these rules, so far as may be needful for their guidance." Shearm. & Redf., Neg., sec. 202. Or, in the language of a charge approved by the Supreme Court in Railway v. Hall, 78 Texas, 659, "it is a duty resting upon railroad companies, for the protection of their employes, to adopt reasonable rules, regulations, or methods of conducting their business such as will, if properly pursued and carried into effect, afford a reasonable degree of safety to its employes while engaged in the discharge of their duties against extraordinary or unnecessary dangers. To render such rules and regulations necessary, the business must be of a complex nature, or such as to expose the servant to unusual or extra hazard. Railway v. Eckles, 87 Texas, 344; Sanner v. Railway, 17 Texas Civ. App., 377. The rule requiring the adoption of regulations for the conduct of complicated business is not intended to protect workmen from their own negligence. Such regulations and rules are required for the purpose of enabling the employes to understand and comprehend the operation and management of instrumentalities and services of a complex nature, which may result in injury to them if not understood, and not to guard or protect them from their own negligence or misconduct, nor shield them from dangers or risks which are apparent and obvious to persons of ordinary intelligence. Morgan v. Iron Co., 31 N. E. Rep., 234; Railway v. Voss, 12 Am. and Eng. Ry. Cas., 820; Berrigan v. Railway, 30 N. E. Rep., 57. The employer is "only bound to use ordinary care in formulating rules, and it is not reasonable to proceed upon the assumption that every injury to an employe can be guarded against and prevented by making such rules. It is the duty of the master to guard against, by rules or otherwise, only such accidents and casualties as might reasonably be foreseen by him

in the exercise of ordinary prudence and care." Berrigan v. Railway, supra. To enable a servant to recover on the ground of the absence of a 'rule, he must prove its absence and necessity, and that its absence was the proximate cause of his injury. Railway v. Cumpson, 4 Texas Civ. App., 25; 23 S. W. Rep., 47; Berrigan v. Railway, supra; Peaslee v. Railway, 152 Mass., 155, 25 N. E. Rep., 71; Rutledge v. Railway, 110 Mo., 312, 19 S. W. Rep., 38; Gibson v. Railway, 23 Ore., 493, 32 Pac. Rep., 295: Where the work is of such a hazardous and complex nature as, in the exercise of ordinary care, to require the master to make a rule reasonably sufficient for the protection of his servants engaged in the employment, and, in observation of the requirement, such a rule is made and promulgated by the master, he has the right to assume, in the absence of notice to the contrary, that it will be obeyed. If it is not, and the servant is injured in consequence by the act of a fellow-servant or by his own negligence, the master can not be held liable for failing, in anticipation of such act of disobedience, to make a second rule to protect the servant against the act of his coemploye, done in disobedience of the first, or to protect the servant against an act of his own disobedience. If the master were required to make a rule to protect his servant against an act of a fellow servant done in disobedience of a rule already made and enforced for the servant's protection, there would be no limit to the number of rules he would be required to make. In that case the necessity of the second rule would rest upon the supposition that the first would not be obeyed, the necessity of the third would contemplate the disobedience of the second, and so on ad infinitum, which would tend to confuse rather than protect servants.

It may be conceded that the nature of the employment of appellant's servants in its car shops, taken in connection with their surroundings, was of such an extra hazardous nature as required the company, in the exercise of ordinary prudence, to adopt such rules as would be reasonably necessary to protect such employes in the performance of the duties. The evidence shows that appellant had, at the time of the accident, a rule in force (the one requiring a blue flag to be displayed), which, had it been observed by appellee's fellow-servants, would have been reasonably sufficient to have afforded him protection, and prevented the occurrence of the accident whereby he was injured. As is seen from appellee's petition, he charges that the string of freight cars were, by the negligence of appellant's servants operating the switch engine, propelled along the crossing and against the flat car, and his injuries caused thereby. The undisputed evidence, in our opinion, fully sustains this allegation. This being so, there being at the time no abrogation or modification of the common law doctrine that the master is not liable for injuries to a servant inflicted by the negligence of his fellow-servant, the appellee can not recover, unless some negligence of appellant, concurring with the negligence of said fellow-servant, is shown to be the proximate cause of the injury. If the

appellant was negligent, it must have been through its failure to provide some rule or regulation reasonably sufficient to protect appellee against the danger incident to his passing between the cars while carrying a sandboard on his shoulder in such a manner as to obscure his vision and impair his hearing. In order to impose upon the appellant the duty of providing a rule for such an exigency, it must be shown that it could have reasonably foreseen the conditions, facts, and circumstances surrounding appellee, as would render a rule necessary for his or his coemployes in a like position, and that a rule could have been made which would have been reasonably sufficient to have averted the accident. It is absolutely impossible for a master to foresee and provide such rules and regulations for the conduct of a hazardous business as will guard and protect his servants, in their employment, against every danger. From the very nature of the facts and circumstances attending appellee's injuries, it seems to us impossible for appellant to have foreseen his danger, and made any other rule than it had in force at the time, that would have prevented the occurrence of the accident. A jury has no right to find that a rule should have been adopted, without sufficient evidence that such rule was necessary and practicable. Morgan v. Iron Co., 133 N. Y., 666; 31 N. E. Rep., 234; Burke v. Railway, 23 N. Y. Supp., 458; Kudik v. Railway, 29 N. Y. Supp., 533. A master has a right to assume that his servant will give some heed to the first law of nature,—self-preservation,—and use the faculties and senses given him by his Creator for discerning and averting danger. It certainly is as much the duty of the servant, when it can be done, to protect himself against danger, as it is the duty of his master. In the language of Mr. McGalliard, appellee's own witness: "Ordinary experience teaches a man to keep a lookout when going into an open space like that between cars. I would need no rule to tell me that it was a place of danger, and I would not need any signal to tell me that it was dangerous." These are the words of a witness who was in the same employ as appellee, and working with him in El Paso in the same shop. If *he* needed no rule or signal to notify and warn him of the danger which ordinary experience teaches a man to keep a lookout for, how can it be said that it was the duty of appellant to provide rules and signals for appellee, who was engaged in the same service at the same time and place? No other rules or regulations than had been made by appellant were suggested either by the pleadings or the evidence in the record before us. In the language of Mr. Justice O'Brien, speaking for the Court of Appeals of New York, in Berrigan v. Railway, supra: "There is no proof in the case that rules for such a case had ever been promulgated by any other railroad company, or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule. * * * In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads, or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or

practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury. Besides, it affirmatively appeared that the rules in use by the defendant provided in a reasonable way against the occurrence of such an accident, so far as such casualties can be prevented by rules."

After a most careful examination and consideration of the evidence, we can not escape the conclusion that the testimony does not tend in the least to show that appellant was guilty of any negligence proximately causing the injury to appellee, but that the undisputed testimony shows conclusively that his injuries were caused by the acts of his fellow servants, to which his own negligence contributed.

The facts in this case have been fully developed by the evidence, and there being no probability that another trial will disclose different facts, we deem it our duty, because there is no evidence tending to support the verdict, to set the judgment aside, and here render judgment in favor of appellant, which is accordingly done.

*Reversed and rendered.*

Writ of error refused.