## GREAT ATLANTIC & PACIFIC TEA CO. v. COLEMAN.
### No. 12521.

Court of Civil Appeals of Texas.
Galveston.

April 30, 1953.

Rehearing Denied June 25, 1953.

John N. Touchstone, of Dallas, for appellant.

Burns & Grumbles and Harry H. Burns, of Houston, for appellee.

MONTEITH, Chief Justice.

This action was brought by Thomas Coleman as plaintiff, for recovery of damages alleged to have been sustained by him as a result of the common-law negligence of appellant, The Great Atlantic & Pacific Tea Company, which resulted in a hernia.

Appellee alleged that appellant was negligent in failing to furnish him a reasonably safe place to work. He alleged that he was injured while loading crates of eggs from a stack of egg crates on the concrete floor of the cooler room; that while lifting a crate of eggs he lost his balance and his feet slipped about one-half of a foot and he felt a pain in the lower part of his body. He testified that the floor of the cooler room got wet about every other week, and that one of the officers of appellant would have one of the employees come in and clean the water up; that after the accident, which occurred on Saturday, November 4, 1950, at about 7:00 o'clock in the morning, he continued to work until 12:00, finishing his half day, and that he did not report his accident until Monday morning and that he did not say anything about the floor of the cooler being wet and slippery.

Appellee had worked for appellant for about three years, when he was put in the egg room, where he had been working for four or five months prior to the accident.

In its answer appellant denied generally all of the allegations in plaintiff's petition. It alleged that there was no way in which it could have foreseen the accident or the existence of any physical defect or condition under which appellee could have sustained the claimed injuries; that it had no notice or knowledge of the existence of any claimed dangerous or defective condition in the cooler room on the date of the accident; that plaintiff did not testify to any

facts which would bring notice to appellant of such claimed condition and that there was no one so far as the record shows who visited the cooler room except appellee and that he did not inform appellant of any such condition and that in so far as the record shows appellant did not realize that there was such danger. Further appellant contends that there is no finding that there was any structural defect or a defect of any character in the cooler room equipment, and the condition, if any, was open and obvious, and that appellee at all times knew thereof.

In Vol. 22, Texas Law Review, at page 489, it is said, in substance, that the occupier of premises must have superior knowledge of a claimed dangerous condition before it can be charged with either negligence or proximate cause.

■ It is the established law in this State that where a claimed danger is open and obvious and an employee has equal opportunity to discover the same there is no basis for liability against the master. 29 Tex.Jur. 215 and 216; City of Panhandle v. Byrd, 130 Tex. 96, 106 S.W.2d 660; Clayton v. Chicago R. I. & G. R. Co., 137 Tex. 441, 154 S.W.2d 453.

Appellant also alleged that in an effort to compromise this controversy without litigation it had paid appellee the sum of $220.70, and that in consideration thereof appellee had executed a written release discharging appellant from any and all claims existing by virtue of said accident; that such release was supported by a valuable consideration and that it exists as a bar to any cause of action pled by appellee in this connection.

Mr. H. J. Martin, operating superintendent for appellant, testified that the room referred to as the "cooler" room is a refrigerated area in appellant's warehouse; that the refrigerating machinery is an ammonia machine which is located just outside of the cooler which has a drain pan and a drain pipe which is supposed to take the water from the drain pan off to the outside; but that there had been occasions, very infrequently, when there was water on the floor and that usually the first employee who discovered such a condition would report it to the foreman, who would immediately take steps to dry up the floor and unstop the drain so that the water would flow off. He testified that they did not have any report from Coleman the day he got hurt.

Mr. H. J. Nowak, an employee of appellant, testified that he had taken the report from appellee on Monday after appellee's injury and that such report was reduced to writing. He testified that appellee made no reference in the statement about his having slipped on account of the floor being wet and slippery.

The only ground of negligence submitted was a failure to furnish appellee with a reasonably safe place to work.

In answer to special issues submitted, the jury found that appellee had sustained personal injuries while working for appellant in the refrigeration room on the occasion in question and that appellant had failed to furnish appellee with a reasonably safe place to work and that such failure was negligence and a proximate cause of the accident and the resulting injuries to appellee. The jury found that plaintiff signed a statement with reference to the accident but that he was told by Mr. Martin that such instrument was nothing more than an authorization for him to return to work and that the evidence contained in such statement was not true and that the statement was a material inducement to get plaintiff to sign such statement. The jury found that appellant did not pay the consideration of $220.70 for a release and that such failure was a material and substantial failure of consideration upon which the release was based and that the injuries sustained by appellee were not the result of an unavoidable accident. They found that the physical pain and mental suffering sustained by appellee were the proximate result of appellee's injuries and that appellee's loss of earnings as the proximate result of his injuries was $4,079.30.

Appellee relies on four counter-points of assigned error, in which he contends there was sufficient evidence to sustain the jury finding that appellant's failure to furnish him with a reasonably safe place to work was negligence, that there was suffi-

cient evidence to sustain the jury's finding that the defendant's negligence in failing to furnish plaintiff with a reasonably safe place to work was a proximate cause of plaintiff's injury.

Appellant relies upon six points of assigned error. Under its Points Nos. 1, 2, 3 and 4 it contends that there was no evidence in the record which would sustain a finding of negligence on the part of appellant in failing to furnish plaintiff with a reasonably safe place to work or to sustain a finding that appellant negligently failed to furnish plaintiff with a reasonably safe place to work or that appellant proximately caused appellee's alleged injuries and that therefore the rendition of judgment against appellant was erroneous.

Appellant contends that an examination of appellee's entire testimony does not reflect the amount of claimed wetness or dampness of the floor or the extent of any wetness and slippery condition. Appellant contends that there is no evidence which would sustain a finding that appellant knew or reasonably could have known of any defective or dangerous condition existing in appellant's cooler or refrigerating room at the time the accident occurred and that nowhere in appellee's testimony is there any fact testified to which would cause appellant to have notice of such claimed defective and dangerous condition.

It is undisputed in the record that there was no notice or knowledge of any dangerous or defective condition existing in the cooler room on the date of the accident, and no testimony of any facts which would bring notice to appellant of such condition, and there is no evidence of any structural defect in the cooler or refrigeration room and no finding of any structural defect therein, and there is no evidence of any hidden danger therein, and that the condition of the room in which the accident occurred was open and obvious and appellee at all times was acquainted with the room.

In the case of Schmidt v. Carper, 270 App.Div. 411, 61 N.Y.S.2d 185, the court announced the rule that the responsibility of an employer to furnish an employee a safe place to work is determined by the reasonable foreseeability of the harmful conse-quences by reason of the employer's superior knowledge of the hazards which caused the harm, and that if the employee is injured on conditions such that he discerns the situation and appreciates the danger, or if it is so obvious that an ordinary prudent person in employee's position would have discerned the situation, liability is not cast upon the employer.

Appellant contends that under plaintiff's evidence the condition complained of had existed for four or five months prior to the accident and that during that period appellee had worked under the same conditions and that during that time there had been no accident of a similar character and that there could be no foreseeability on the part of either appellant or appellee that such an accident would occur.

Appellant cites the following authorities in support of its contention that a master need not protect a servant from accidents which a reasonably prudent man would not have expected. It contends that there is no evidence in this cause that the defendant could have expected an accident of this character to happen and that appellee's own evidence refutes such a finding. Dullnig v. G. A. Duerler Mfg. Co., Tex.Sup., 87 S. W. 332; Ebersole v. Sapp, Tex.Com.App., 208 S.W. 156; Missouri, K. & T. Ry. Co. v. Graham, Tex.Com.App., 209 S.W. 399; Southern Pac. Co. v. Wellington, 27 Tex. Civ.App. 309, 65 S.W. 219, error refused; Sherrill v. American Well & Prospecting Co., Tex.Civ.App., 176 S.W. 658, no writ; Linville v. Chesapeake & O. R. Co., 115 W. Va. 610, 177 S.E. 538; Russo v. Swift & Co., 136 Neb. 406, 286 N.W. 291.

There is no proof in the record that the refrigeration machine in appellant's plant was faulty or defective or that it was not sufficient for the purposes for which it was used, and no pleading to that effect and no jury finding.

In support of this contention, appellant cites Vol. 118 A.L.R. 449, which holds that a master cannot be held responsible where a servant slips and falls under such condition. In this cause there is no evidence of appellee's having fallen, and he testified that his foot slipped half a foot.

In support of its contention that such testimony cannot stand when it is contrary to physical facts, appellant cites the following authorities: Austin v. Neiman, Tex.Com. App., 14 S.W.2d 794; San Antonio Public Service Co. v. Fraser, Tex.Civ.App., 70 S. W.2d 232; Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78, 83; Vol. 20 Am.Jur. Secs. 1183–1184, pp. 1033–1035.

In support of its contention that common-law negligence must be proved, even though the relationship of master and servant existed; appellant cites the case of Hopson v. Gulf Oil Corp., Tex.Civ.App., 237 S. W.2d 323, 342, which involved a master and servant relationship. In that case plaintiff was a seaman who attempted to recover under the Jones Act, 46 U.S.C.A. § 688, which provided for a recovery only upon proof of common-law negligence. Plaintiff in that case claimed that negligence existed because of a spot of oil on the deck of the ship on which he was working. The Beaumont Court of Civil Appeals held that knowledge by the master either actual or constructive, of the dangerous condition in time to abate it before it injures plaintiff is essential to establish a violation of defendant's affirmative duty to abate the condition, and that such knowledge in time must be had before that affirmative duty to abate comes into existence. The Court held that without the necessary knowledge in time there could be no necessity of acting on it and that the question of negligence is not reached until knowledge in time had been established. As a result, in cases in which an affirmative duty to abate has been invoked, the determination of knowledge in time has been thought to justify the submission of separate issues to the jury. Further, the court said, "This, it seems to me, necessarily eliminates any recovery based upon defendant's duty not to create a condition dangerous to the plaintiff and necessarily throws plaintiff back upon defendant's duty to discover and abate conditions dangerous to plaintiff. And this brings us back to a point already made, namely, that defendant cannot be held liable for negligently failing to abate a dangerous condition—remove the grease—unless defendant either knew or ought to have known, in time to have removed the grease before plaintiff fell, that the grease was on the deck. If the issue of discovery in time was raised by the evidence, then it was submitted, at least partially, in Issue 3–A, and being a material inquiry, it was properly put to the jury in a separate issue." This cause reached the Supreme Court under the same style of parties. It reaffirmed what the Beaumont Court of Civil Appeals said with regard to the necessary proof for knowledge of the presence when there was no proof that the grease had remained on deck for a period of time sufficient to have permitted or allowed the defendant to have discovered same in the exercise of ordinary care and prudence.

The Supreme Court, at page 357 of 237 S. W.2d 352, in its opinion, held that, "* * It is very doubtful whether the evidence raises any issue with respect to the presence of the grease on the deck. There is no evidence tending to prove that any employee of respondent, acting within the scope of his employment, either deliberately or negligently placed or dropped the grease on the deck, and there is no evidence that respondent knew that the grease was on the deck, and there is little, if any, evidence tending to prove that the grease remained on the deck for such a period of time that in the exercise of ordinary care respondent should have discovered it. * * *"

Continuing, the Supreme Court said, "In a suit under the Jones Act the owner of the vessel is not liable as an insurer of the safety of the seamen. He is liable only for negligence. The decisions under the Federal Employers' Liability Act [45 U.S.C.A. § 51 et seq.] are applicable here by reason of the incorporation of the provisions of that Act into the Jones Act. [Citing authorities.] One of the specific grounds of negligence alleged by petitioner is negligence in failing to furnish him a reasonably safe place in which to work, but there is no evidence that the place where petitioner worked was not reasonably safe unless it was made unsafe by the presence of the spot of grease. We are brought back to the question whether respondent was negligent on account of the spot of grease, more par-

ticularly in allowing the grease to be on the deck.

\* \* \* \* \* \*

"The question here presented is in our opinion the same in principle as that raised and discussed in Missouri, Kansas & Texas Ry. Co. v. Jones, 103 Tex. 187, 125 S.W. 309, 310. That was a suit by a switchman who was injured when he stepped on an iron bolt in the yards of the railroad company. The court, in holding that there was no proof of negligence and in rendering judgment in favor of the railroad company, said: 'In order to constitute it [negligence], the bolt must have been put on the track by some employé, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the failure to know it was due to a want of proper care.'"

Another case in reference to appellant's contention that the evidence does not raise the issue of common-law negligence is the case of Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, at page 376, in which the Supreme Court said, "If the inference might be drawn from the evidence that Mrs. Adair's fall was due to the presence of some liquid or other substance on the stairs, the bank would not be liable because there is no proof that the bank's employees placed it there or knew or had reasonable opportunity to know of its presence." (Citing authorities.)

In the case of The Fair, Inc. v. Preisach, Tex.Civ.App., 77 S.W.2d 725, 726, in which it was held that "* * * But, if the servants and employees were not responsible for the presence of oil on the floor—and that was appellant's testimony—then it could be convicted of negligence only upon a jury finding that it knew that the oil was on the floor, or that it had been there long enough to charge it with knowledge of the presence of the oil in time to remove it or otherwise safeguard those using the aisles. [Citing authorities.] * * *"

In the instant case there is no evidence from which a jury could determine that the water had been present on the floor for a sufficient length of time for the defendant to have discovered it, because any finding would be based purely on imagination and not evidence.

Quoting from the case of Moss v. Safeway Stores, Inc., 185 F.2d 966, 967, the United States Court of Appeals for the Fifth Circuit said, "The evidence does not reveal whether the presence of the object was known to appellee, or how long the object had remained in the store, or even that its presence was ordinarily dangerous to the safety of store customers. Under such circumstances, we can only conclude that appellant has failed to make out a prima facie case. It is well settled in Texas that in order to impose liability on a storekeeper for injuries to a business invitee by reason of a dangerous condition on the premises, the dangerous condition must have been created by the storekeeper, or must either have been known to him or have existed for such a time that in the exercise of ordinary care he would have discovered it." (Citing authorities.)

In the case of Russell v. Liggett Drug Co., Inc., Tex.Civ.App., 153 S.W.2d 231, 233, in support of appellant's contention that there was no negligence upon the part of the defendant, the court held, "Furthermore, the testimony shows that the injured party was in the beauty shop for an hour or two the day before, and that on the occasion in question, she entered the shop in the morning, remaining there until early afternoon; and that, to engage in her work, she was compelled to walk through the room where she later fell. Whatever may have been the condition of the floor, it was not concealed, but obvious and plainly to be observed by the injured lady through walking thereon. From this perspective, it is difficult to escape the conclusion of nonliability for injuries from dangers which are manifest, or as well known to the injured party as to the defendant. 20 R.C.L., Negligence, pp. 56, 57. A well-stated pronouncement of the law controlling the instant facts is found in Fort Worth & D. C. R. Co. v. Hambright, Tex.Civ.App., 130 S.W.2d 436, 439, where Judge Stokes, for the court, said: 'The only condition under which such an owner is liable to those whom he invites upon his premises are when dangerous and unsafe instrumen-

talities or conditions exist and are known to him and not known to such invited persons and they are injured by such instrumentalities or conditions. It follows that if a person is injured under such circumstances and the instrumentality or condition by which he was injured is as obvious or well known to him as it is to the owner of the premises, no liability exists for such injury and the law will allow him no recovery therefor.'

"We are of opinion that the trial court correctly directed a verdict herein, and its judgment in so ruling must be in all respects affirmed."

█ Appellant contends that the mere fact that the plaintiff testified that the floors were wet and slippery, without testifying with regard to the extent thereof, is no evidence of negligence. The plaintiff must go further and prove that the defendant had knowledge that such condition was unsafe or dangerous. As the court said in Rogers v. Collier, Tex.Civ.App., 223 S.W. 2d 560, 563, writ refused:

"Under these facts, we sustain appellant's contention that his motion for an instructed verdict should have been granted, and that there is no evidence to support the finding that the defendant or his agent or employees were negligent in any particular which caused Mrs. Collier's fall.

"It is well settled that the waxing, or oiling of floors by business houses, offices and shopkeepers is a necessary and customary practice, is not negligence per se, and that a party injured by falling on a waxed floor must go further and establish by competent proof some specific act of negligence, either in the initial waxing or in the method of cleansing. [Citing authorities.] There is no evidence tending to show either here. The porter, Moody, testified that he waxed the floor where Mrs. Collier slipped and fell every Thursday night and that it would dry in some thirty minutes. This floor had had from Thursday night until Saturday noon to dry. It had been swept four times Friday and twice Saturday before Mrs. Collier fell. Mrs. Collier had walked' over this floor four times before she fell. Numerous persons had used it without falling. It is true that Moody testified that he did not rub or buff the floor after he waxed it, but this is not shown to be negligence. It is also true that Townsend testified that where wax is put on too thick when it dries it forms a powder. It is not shown that after the wax has dried and the powder has formed that a dangerous condition results. There is no evidence to show that appellant, his agent or employees were guilty of any specific act of negligence which proximately caused Mrs. Collier's fall."

Under appellant's Point No. 5 it alleges that the finding of the jury that the defendant negligently failed to furnish plaintiff a reasonably safe place in which to work and that such failure was the proximate cause is nothing more than a general, vague, and indefinite statement upon a proposition or conclusion of law; therefore, the rendition of judgment in favor of the plaintiff was erroneous.

█ In this case there is no manner of divining that which the jury found as a basis for its finding that the place was not reasonably safe. This finding seems to be a general one, which is insufficient to impose liability against the defendant because liability is based upon a finding of fact instead of a conclusion of law. Appellant cites the case of Harbin v. City of Beaumont, Tex.Civ.App., 146 S.W.2d 297, which holds that such a finding is nothing more than a conclusion of law. While it is true that this opinion said that was a conclusion of law in view of the other facts found by the jury, appellant contends that this finding is a conclusion of law, regardless of any other facts which might be found by the jury. In support of this contention appellant cites Cuniff v. Bernard Corporation, Tex.Civ.App., 94 S.W.2d 577.

Under its Point of Error No. 6 appellant contends that the uncontroverted evidence reflecting that the instrument of release signed by the plaintiff, was a valid and binding release and the jury having found that it was based upon a valuable consideration, the rendition of judgment in favor of plaintiff was erroneous.

Appellant relies on the release of the alleged cause in suit, in consideration of the payment of the sum of $120.70, the hos-

pital bill and doctor's bill in the sum of $100. Appellee plead that the release was fraudulently obtained. Appellee alleged that the release was fraudulently obtained by the misrepresentation by appellant that the paper was merely an authorization for appellee to return to work. By amendment appellee also plead a failure of consideration for said release and that appellant failed to make the payments.

The release in question was alleged to have been signed by appellee on the 19th day of December, 1950. It recites a full release in consideration of the payment of the cost of an operation, a hospital bill and $100 doctor bill, to effect a cure "for injuries sustained by me (appellee) on November 4, 1950, * * * and sick pay for time lost", in consideration whereof the appellee released appellant from any further claim of the accident.

Appellee did not dispute the receipt of five weeks sick pay at $41 per week while he was injured and unable to work. These payments were sickness benefits which were paid by appellant voluntarily and the employee makes no consideration.

Appellee testified that none of the release was read to him, and that Mr. Martin told him that the paper was for signing to go back to work. The witness Martin, superintendent of the defendant's warehouse, denied the testimony of appellee with regard to his claimed statement that the paper was merely an authorization for the plaintiff to return to work; he testified that he explained the release fully to appellee and read the typewritten portion thereof. There is much testimony in the record with regard to hospitalization insurance, which testimony the appellant submits is irrelevant to any issue and therefore any summation thereof will be omitted.

The jury, in answer to Special Issue No. 9, found that such sums had been paid. In answer to Special Issue No. 5, the jury found that at the time of the signing of the release Mr. Martin told appellee that the paper was only an authorization for appellee's return to work. In answer to Special Issue No. 6 the jury found that the appellee signed the release solely in reliance thereon; in answer to Special Issue No. 7, the jury found that statement was not true; in answer to Special Issue No. 8, the jury found that such statement was a material inducement to get appellee to sign said release. The witness Martin denied that appellee's statement, that he had told appellee that the statement was merely an authorization for appellee to return to work, was true. The record shows that the hospital and doctors were paid by appellant. The jury stated in answer to Special Issue No. 9 that they did not find that appellant had not paid $220.70 incident to appellee's operation. Appellee did not dispute the receipt of five weeks sick pay at $41 per week.

It follows that under the above-cited authorities, the judgment of the trial court must be reversed and this cause remanded to the trial court.