**ST. LOUIS, SOUTHWESTERN RY. CO. OF TEXAS, v. GILLENWATER.**

(No. 909–4672.)

Commission of Appeals of Texas, Section A. May 11, 1927.

1. Trial ⬥⟾140(2)—It is province of jury to believe testimony of employé suing for injuries.

In action by railroad employé to recover damages for injury, it is province of jury to believe testimony of employé.

2. Master and servant ⬥⟾279(4)—Evidence held to support finding that employé, aiding supply store helper in moving coupler, was negligent.

Evidence *held* to support finding that fellow employé, aiding railroad's supply store helper in moving coach coupler, was negligent in releasing hold on coupler, causing it to fall on helper's foot, and that such negligence was proximate cause of injury.

3. Master and servant ⬥⟾180(4) — Railroad held chargeable with negligence of employé aiding another employé in moving coupler.

Railroad is legally chargeable for negligence of its employé aiding its supply store helper in moving coach coupler.

4. Appeal and error ⬥⟾1050(2)—Admission of evidence of condition of place where injury occurred held harmless, where it had no bearing on negligence of fellow employé causing injury.

In action by railroad employé for injuries sustained while moving coach coupler, admission of evidence that employé did not apprehend danger from littered condition of aisleway where coupler fell *held* harmless, where condition of aisleway had no bearing on negligence of fellow employé in releasing coupler and causing injury.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by J. E. Gillenwater against the St. Louis, Southwestern Railway Company of Texas. Judgment for plaintiff was affirmed by the Court of Civil Appeals (284 S. W. 268) and defendant brings error. Affirmed.

F. B. Walker and Thompson & Barwise, all of Fort Worth, for plaintiff in error.

Sam J. Calloway and Burney Braly, both of Fort Worth, for defendant in error.

HARVEY, P. J. This suit was brought by the defendant in error, J. E. Gillenwater, against the plaintiff in error, the St. Louis, Southwestern Railway Company of Texas, to recover damages on account of personal injuries alleged to have been sustained while in the employ of said railway company. The case was tried upon special issues, and, upon the verdict of the jury on such special issues, judgment was rendered by the trial court in favor of Gillenwater for the sum of $5,094 damages. On appeal by the railway company to the Court of Civil Appeals, that court affirmed said judgment. 284 S. W. 268.

On May 6, 1924, Gillenwater was in the employ of the railway company as a supply store helper at or near Hodge Station, Tex. His duties as such store helper consisted, in part, of arranging and keeping in order the store materials, supplies, and parts used in building and repairing of railroad equipment. While so engaged, and while in the performance of his duties and under the control of the foreman of the railway company, he and a fellow servant, Glen Norman, were directed by the foreman to move certain couplers from a point in the yards of the railway company to a platform which had been constructed and was to be used for the purpose of stacking and storing couplers. While Gillenwater and Norman were handling a coach coupler and undertaking to store it on said platform, the coupler fell from the platform, striking Gillenwater on his right foot and ankle, resulting in the injuries alleged.

As causing his said injuries, Gillenwater charges the railway company with specific and distinct acts of negligence in the following particulars: (1) In failing to furnish him a reasonably safe place to work; (2) in failing to furnish him a reasonably sufficient force of men to assist in doing the work required; and (3) that his fellow employé, Glen Norman, negligently let go or turned loose the coach coupler and allowed same to topple over and fall on Gillenwater, as above stated.

Each of these grounds of negligence was submitted to the jury in the form of a distinct special issue. Verdict was rendered by the jury, sustaining each of these charges of negligence. The plaintiff in error assails each of these jury findings on the ground that there is no evidence to support same or to warrant the submission of either of said special issues to the jury.

We find it necessary to consider the contentions of plaintiff in error only in so far as they relate to the third ground of negligence stated above, to the effect that Glen Norman, the fellow servant of Gillenwater, negligently turned loose or let go of the coupler and allowed same to topple over and fall on Gillenwater. The coupler in question was a coach coupler, and consisted of an iron stem some 60 inches long and 4 to 6 inches square. Upon one end of this iron stem was attached an iron knuckle or coupling device whose general dimensions were about 12 by 14 inches, the whole weighing about 350 pounds. The knuckle end of the coupler was of such irregular shape as not to admit of the coupler standing vertically on that end without support. This coupler was moved by Gillenwater and Norman from the place in the yards where it had been lying to and upon the plat-

'form in question for the purpose of storing it among other couplers stored on said platform. The mode by which these men moved the coupler to the platform is termed "walking" by the witnesses; that is, by standing the coupler in an upright position on its knuckle end and "pivoting it first on one side and then on the other." These two men having thus "walked" the coupler upon the platform to the place where the other couplers were stored, Gillenwater got off the platform into an aisleway, for the purpose of twisting the coupler around in order to store it properly, leaving Glen Norman standing beside the coupler and holding it in a vertical position. The coupler was resting on its knuckle end at a point on the platform near the edge thereof. The immediate circumstances attending the falling of the coupler on Gillenwater are thus detailed by him in his testimony:

"We both walked this coupler across; Glen Norman and I moved this coupler across. At the time it fell we were right at the place where we intended to leave it. It was pretty near the place, but it had to be turned around; there are a couple of shanks on it, an arm on it about so long (indicating), 6 or 8 inches long, and the way it was turned would have been where it would have laid on that. To have laid it down we had to turn that shank around to where it would come on top, be on top when it was laid down. That is what I got on the ground for to do, was to turn this coupler around. Glen Norman and I walked it up there. Then Glen Norman held it, and I was going to get down and turn it around. I did get down; I got around to the front of it on ground, and on the iron that was in the alleyway, and was just fixing to get hold of it and seen it coming through the air at me. I made a jump to get back, and I suppose I tripped; anyway I fell, getting out of the way of it, and it caught my foot. It caught my right foot. * * * It come on down and struck me across, just right by the ankle, in the instep, across the top of my foot. * * * I did not see what Glen Norman was doing at the time I got around on the ground and started to take hold of it. When I started to get down he was ahold of it. The coupler was standing on the big end, and he was holding it; holding this shank in his hands, holding this stem. He was not stooped over. That stem was about as high as his head; it was standing in a vertical position, balanced upright. He was standing right up along side of it and had hold of it at the top end. I did not see exactly what he was doing any more. * * * He was standing right here; we were working it up here; I was right here; he was standing here holding this; I come around here; I got down and was in the act of twisting this around. Yes, sir; I was in the act of doing that; I did not get hold of it. The first thing I knew it was coming right over, at that angle (indicating). I could not turn it around from where I was there (evidently meaning his previous position on the platform). It was in place but had to be turned around on account of that hook there. Glen Norman was holding it. I came around back behind him and got off of the platform.

It fell on me just as quick as I could walk around after I turned it loose.

"Q. He held it until you got around there in his way and then turned it loose. Is that right? A. I could not say that he turned it loose. I do not mean to swear to this jury that he turned it loose on me. I don't say that he turned it loose on me. I said I had my back to him. I could not say whether he turned it loose, shoved it on me, or how come it. I do not know what he did. I do not know what he done to it, but I know that he had hold of it before. * * * Yes, sir; I testified this morning that Glen Norman had plenty of strength. He had just as much as I had. In strength he was just as good a man as I was. * * * Just immediately prior to the accident this coupler had been walked up there, and Glen Norman was standing there holding it, and I went around there. From that time until the accident happened I did not see Glen Norman. When I left him he was holding this coupler at the top. When I next saw the coupler it was loose in the air; he was not ahold of it. I do not know how it got away from him."

Other testimony in the record shows that Glen Norman was a man of sufficient strength to hold the coupler in the vertical position it was when Gillenwater got off the platform, and to prevent it from falling, so long as he retained hold of it as Gillenwater says he had.

[1-3] It was the province of the jury to believe the testimony of Gillenwater. The facts and circumstances to which he testified afford ample legal basis for the jury's finding to the effect that Glen Norman was guilty of negligence in releasing his hold on the coupler, thereby causing it to fall on Gillenwater and injure his foot and ankle as it did. The coupler, according to the evidence, could not be made to stand vertically upon its knuckle end without being supported; Glen Norman was furnishing this support by holding it at the top end when Gillenwater got off the platform for the purpose of twisting it around; he was amply capable of preventing its falling by retaining his hold upon it; he did not have hold of the coupler a moment later when Gillenwater saw it toppling from the platform. The jury were justified in concluding from the evidence, as they did conclude, that Glen Norman turned loose the coupler; that his turning it loose, as he did, was negligence; and that such negligence proximately caused Gillenwater's injuries. The plaintiff in error is legally chargeable with such negligence of Norman.

In view of the conclusion we have reached with respect to the issue of negligence which we have discussed, the other questions as to the evidence failing to raise an issue of fact in respect to other alleged acts of negligence on the part of the plaintiff in error become immaterial.

[4] The plaintiff in error complains of the admission in evidence of the testimony of Gillenwater, to the effect that, from the littered

condition of the aisleway where he was when the coupler fell, he did not apprehend the danger or hazard of a possible accident, the ground of objection being that such testimony was a conclusion of the witness on a mixed question of law and fact. In the state of the case as we find it, this testimony was harmless; it is therefore unnecessary to consider the objection urged against it. The condition of the aisleway could have no bearing on Glen Norman's negligence in turning loose the coupler and permitting it to fall.

We recommend that the judgment of the Court of Civil Appeals, affirming the judgment of the trial court, be affirmed.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.