**MISSOURI–PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Alcide PREJEAN, Appellee.**

No. 13139.

Court of Civil Appeals of Texas.

Houston.

Nov. 7, 1957.

Rehearing Denied Dec. 5, 1957.

Hutcheson, Taliaferro & Hutcheson, Woodul, Arterbury & Wren, Carroll R. Graham and Howard S. Hoover, Houston, for appellant.

W. James Kronzer, Robert L. Steely, Hill, Brown, Kronzer & Abraham, Houston, Ragan & Weaver, Houston, of counsel, for appellee.

WOODRUFF, Justice.

Appellee, Alcide Prejean, filed this suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., seeking a recovery of damages for personal injuries received by him on December 3, 1953, while acting within the course and scope of his employment with Guy A. Thompson, receiver of Beaumont, Sour Lake & Western Railway Company. Before the trial on October 30, 1956, the Missouri-Pacific Railroad Company was substituted as the party-defendant, it having acquired the assets and liabilities of the Beaumont, Sour Lake & Western Railway Company from the receiver.

Appellee alleged and offered proof showing that while working as a car helper in the repair yards used by appellant, he was instructed by his superior to rebrass the journals of the wheels of several cars, including a tank car. In order to perform this work, it was necessary to raise the weight of the car off of the axle by the use of a jack placed beneath the journal box, and after it was raised, to insert his hand therein and remove the brass bearings. He further alleged that the jack gave way while his hand was in the journal box,

letting the weight of the car fall and thereby mashing and severely injuring his hand.

The case was tried to a jury and by the verdict returned in response to the special issues submitted in the charge, it was found that the appellant failed to furnish appellee with blocks to support the railroad car after it was jacked up; that such failure was negligence which proximately caused the injury; that the appellant failed to furnish appellee "a safe place in which to do his work" which was negligence proximately causing his injuries; that the appellant did not furnish a defective jack for appellee's use on the occasion in question; that the event was not an unavoidable accident; and that appellee did not fail to set the jack square and straight under the journal box. The jury found that appellee had been damaged in the sum of $15,000 for loss of earnings from date of injury to the date of trial, loss of earning capacity in the future, and physical pain and mental suffering and anguish both past and future.

The trial court rendered judgment awarding appellee a recovery against appellant for $15,000, less $427 which the Railroad Retirement Board recovered against appellant by way of subrogation for payments made by it to appellee. A motion for new trial was filed and thereafter an amended motion setting forth the grounds here raised was filed, duly presented and overruled, to which action due exceptions were taken, notice of appeal given, and all procedural steps complied with, thus perfecting an appeal to this Court.

Appellant's first contention is that there was no evidence or, if any, the evidence was wholly insufficient to raise or support the issues submitted to the jury on the question as to whether or not appellant was negligent in failing to furnish appellee with blocks to support the railroad car and also in failing to furnish him "a reasonably safe place in which to do his work."

Appellee Prejean, after having first described the nature of the work involved in oiling and rebrassing the journals on freight cars, testified that the hydraulic jack he was using on the occasion in question was about ten inches high, with a base about four inches square at the bottom, and a top about one and one-half inches in diameter. He further testified that the car repairmen were never instructed to use blocks to support the cars after they were jacked up and while rebrassing a journal, nor were they ever told that any such blocks were available. He further stated that he had had no trouble with the jack earlier that morning when using it on other cars. On this car, so he testified, he had placed the jack beneath the journal box on a flat surface shown to be about two and one-half inches wide and six inches long, raised it a few inches, removed the wedge and brass from the journal box and was in the act of wiping the journal when the car "fell", catching his hand and wrist between the journal and the journal box, which caused the injuries to his hand and wrist.

He further testified that it had rained the day before and a part of the night prior to the accident and that the ground was wet and soggy, with water standing on the job site. It was shown, too, that a member of the safety committee had on prior occasions called the Railroad's attention to the fact that water sometimes stood on the site. Several witnesses testified that they had known of prior trouble with jacks going down, or not going up; that the jacks were frequently repaired; that they couldn't say it was the particular jack in question because there is no way of distinguishing them; that a couple of them leaked fluid once in a while; and that they had had cases where jacks would go bad and they would be taken out of service. It was also shown by the testimony that the tank car involved weighed about 43,000 pounds and that there was about 5,000 to 6,000 pounds of weight on each wheel. It was further

shown by one of appellant's witnesses that on "the big jacks" the use of oak timbers was required to prevent the car from falling, but not on the hydraulic jacks, and that the use of blocks under the spring side would be a safety precaution.

■ Since this suit was brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the test of what constitutes negligence and the sufficiency of the evidence to raise that question for the jury is to be determined by the applicable Federal decisions. Port Terminal Railroad Association v. Ross, Tex., 289 S.W.2d 220; Missouri-Kansas-Texas Railroad Company v. Webb, Tex.Civ.App., 229 S.W.2d 204, writ refused n. r. e. Appellant, in its brief, has cited the case of Thompson v. Gibson, Tex., 298 S.W.2d 97, in support of its contention that the evidence was wholly insufficient, under the Federal Employers' Liability Act, to raise a fact issue of negligence on the part of the appellant in failing to furnish blocks to support the railroad cars after they were raised by the jacks. In that case the railroad engineer sued his employer alleging that while in the discharge of his duties and while walking from the roundhouse to a place where his engine had been spotted, on loose gravel which covered the yard and which he alleged created an unsafe condition, he slipped and fell, thus sustaining serious and permanent injuries. Upon favorable findings of negligence and proximate cause, the trial court rendered judgment for the plaintiff, which action of the trial court was affirmed by the Court of Civil Appeals. Our Supreme Court of Texas reversed and rendered the judgment of the trial court because it found, as a matter of law, there was no evidence of negligence in the use of the gravel on the yard by the appellant under the facts and circumstances of that case.

While recognizing the rule applicable in these cases to the effect that in testing the sufficiency of the evidence to raise an issue for the jury must be determined by the Federal decisions, it was held that such rule did not govern the State courts in determining the question of "no evidence."

Appellant conceded in oral argument upon submission of this case, the Supreme Court of the United States on October 21, 1957, granted a writ of certiorari and reversed and remanded the case with the following memorandum opinion [Gibson v. Thompson, 78 S.Ct. 2, 3]:

"We hold that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury."

Among other authorities there cited was Arnold v. Panhandle & S. F. R. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889.

Appellant cites several other cases decided by our State courts which argue well for its position but in view of the disposition of the case of Thompson v. Gibson, supra, and the length to which the Supreme Court has gone in these cases as demonstrated by Ringhiser v. Chesapeake & Ohio Railway Co., 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268, in the face of strong dissenting opinions, we feel impelled to overrule appellant's attack upon the verdict as not being supported by the evidence.

■ Appellant also contends that the jury, having made a specific finding that the jack which it furnished appellee was not defective, the evidence is wholly insufficient to support a general finding to the effect that appellant failed to furnish appellee with a safe place in which to work, although the action is brought under the Federal Employers' Liability Act. The decision rendered by the Seventh Court of Civil Appeals in Panhandle & Santa Fe Railway Co. v. Arnold, 283 S.W.2d 303, 305, was cited as its authority. In that case the Court of Civil Appeals, in reversing the trial court in allowing the employee a recovery, in part said:

"The law of this state is well established that the courts must reconcile any apparent conflict in the jury answers if the same can be reasonably done in the light of the facts of the particular case. A general finding that appellant failed to furnish appellee with a safe place to work cannot stand in the face of the specific findings of the jury exonerating both appellant railway and Billings of any negligence proximately causing appellee's injuries."

This case was reversed by the United States Supreme Court in Arnold v. Panhandle & Santa Fe Railway Co., 353 U.S. 360, 77 S.Ct. 840, 841, 1 L.Ed.2d 889, wherein it was held:

"But even if the rule announced by the Court of Civil Appeals controlled, as we see it these answers present no square conflict. The findings on the special issues do not exhaust all of the possible grounds on which the prior unsafe-place-to-work finding of the jury may have been based. Hence all of the findings in the case might well be true insofar as the record indicates. The petitioner having asserted federal rights governed by federal law, it is our duty under the Act to make certain that they are fully protected, as the Congress intended them to be. We therefore cannot accept interpretations that nullify their effectiveness, for ' * * * the assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.' Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143. See Dice v. Akron, Canton & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398; Brown v. Western R. Co., 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100. The judgment of the Court of Civil Appeals is reversed and the case is remanded."

This being the most recent pronouncement by the United States Supreme Court, appellant's contention, based upon the insufficiency of the evidence to support the general finding by the jury that appellant failed to furnish appellee a safe place to work, must be overruled.

Appellant also assigns as error the action of the trial court in submitting to the jury that part of the damage issue involving loss of earning capacity in the future, and future pain and suffering, and in entering judgment in appellee's favor on the verdict because appellee failed to offer any evidence to show at what rate of interest money could be safely invested in the vicinity of Harris County at the time of trial.

■ Appellant has cited Chesapeake & Ohio Railway Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 632, 60 L.Ed. 1117, as its authority. The court in that case, which was brought under the Federal Employers' Liability Act, was concerned only with the necessity of instructing the jury that in assessing damages where petitioner sought to recover for the loss of future benefits or contributions, that such amount should not be determined as the lump sum equal to what the petitioner would have received if the loss had not occurred but only the present cash value of such aggregate amount. The court held that the proper rule was the present cash value of such amount of future benefits, and it was error to refuse such instruction. In so holding it was, in part, said:

"We are not in this case called upon to lay down a precise rule or formula, and it is not our purpose to do this, but merely to indicate some of the considerations that support the view we have expressed that, in computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to cir-

cumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.

"We are aware that it may be a difficult mathematical computation for the ordinary juryman to calculate interest on deferred payments, with annual rests, and reach a present cash value. Whether the difficulty should be met by admitting the testimony of expert witnesses, or by receiving in evidence the standard interest and annuity tables in which present values are worked out at various rates of interest and for various periods covering the ordinary expectancies of life, it is not for us in this case to say. Like other questions of procedure and evidence, it is to be determined according to the law of the forum.

"But the question of the proper measure of damages is inseparably connected with the right of action, and in cases arising under the Federal employers' liability act it must be settled according to general principles of law as administered in the Federal courts."

The court in the foregoing case only recognized the admissibility of testimony concerning the earning power of money, but nowhere was it intimated that the duty rested upon the plaintiff to introduce any such testimony, and we know of no such rule in this jurisdiction. Appellant's contention, therefore, that this cause should be reversed because appellee failed to introduce in evidence the rate of interest at which money can be safely invested in Harris County, Texas, is hereby overruled.

■ Appellant further urges as error the action of the trial court in overruling its amended motion for new trial because the jury's finding of $15,000 as damages in this case was so grossly excessive that it should

have been set aside, and the failure to do so on the part of the trial court requires a reversal of this cause or, in the alternative, a remittitur in this Court of at least $10,000.

This point necessarily requires a review of the testimony touching upon this issue.

Without question when the jack under the journal box gave way and appellee's hand was caught in the box, a tremendous weight was thrown upon it. Appellee could not remove his hand before someone came to his assistance and jacked up the car. Several witnesses testified that during this interval appellee suffered severe and excruciating pain and when his hand was removed it was bleeding badly and a tourniquet was applied to his arm. It was unquestioned that his hand was swelling before he left the scene and that he was in great pain enroute to the clinic.

The medical testimony showed that he suffered a deep cut on the back of his left wrist about an inch and a quarter long, the skin was knocked off of a large area of the back of his left hand, and a bone was broken in his wrist. Upon being taken to a doctor at the Houston Clinic, the lacerations were sutured and his hand and wrist were placed in a splint for the next four weeks. It was also shown that he had swelling in his arm when he was last seen by the doctor on March 4, 1954.

Appellee was not able to resume work until March 8, 1954, when he went to work for the Port Terminal Railroad Company. At that time he suffered decreased strength in his hand and wrist, and whenever he attempted to pick up anything heavy his left hand and wrist would give way. With weather changes there was pain in various regions about the wrist, thumb and fingers.

Although lefthanded, his left forearm was smaller than his right when he was examined by a doctor in June of 1954, and he had some decreased strength in his fist grip. At the time of the trial in October, 1956,

appellee testified that his left hand and wrist were weak and tired easily. The doctor who testified upon the trial also stated that after three years the maximum of recovery should have taken place.

It was pointed out that appellee was earning $1.67 per hour with the appellant when he was injured, and on March 8, 1954, he went to work for the Port Terminal Railroad Company at $1.63 per hour, and in August of the same year he went to work for the Houston Independent School District for $220.50 per month. After a year his salary was raised to $321.66 per month, and he was drawing the same salary with the School District at the time of the trial. Appellee further testified that his left wrist and hand continue to hurt him occasionally and, in the performance of his work, they tire easily.

The foregoing résumé of the evidence establishes the fact that the appellee suffered severe and excruciating pain at the time of the accident and for at least several days thereafter. It is evident also that he suffered considerable pain during the time that his hand and arm were in the splints. Without question he suffered a complete loss of wages for about three months and the testimony amply justifies the conclusion that by reason of the permanent weakness in his left forearm, wrist and hand, he has also sustained a considerable loss of earning capacity. Likewise, the evidence warrants the conclusion on the part of the jury that the appellee will experience some pain and suffering from his wrist and hand in the future, especially in view of the doctor's testimony that these members have reached their maximum recovery.

Although it appears that the jury's verdict of $15,000 was indeed ample, the verdict is not excessive nor should a remittitur be required in this case.

Judgment affirmed.