**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

**v.**

**Jake L. SPARKS, Appellee.**

**No. 45.**

Court of Civil Appeals of Texas. Houston (14th Dist.).

Dec. 20, 1967.

Rehearing Denied Jan. 24, 1968.

Thomas S. Terrell, Gordon A. Holloway, Harman Parrott, Sewell, Junell & Riggs, Houston, for appellant.

W. W. Kilgarlin, Phelps, Kilgarlin & Snell, Houston, for appellee.

BARRON, Justice.

This suit was brought by Jake L. Sparks against defendants, Missouri Pacific Railroad Company and Railway Express Agency, Inc., under the Federal Employers' Liability Act, 45 U.S.C.A., Sections 51–59. Sparks alleged that he was injured on January 25, 1963 while working in a railroad car of a Missouri Pacific train. Defendant, Railway Express Agency, Inc., (hereinafter called REA) received an instructed verdict on the ground that it was protected from the suit herein by workmen's compensation coverage. The case was submitted to the jury under the allegations that Jake Sparks was an employee of the Missouri Pacific at the time in question, and thus came under F.E.L.A. The jury answered every liability issue in favor of the appellee-plaintiff, Sparks. In answer to the damage issue, the jury stated, "20,000.-00 as suit demands." The trial court entered judgment on the jury's verdict against Missouri Pacific in the amount of $20,000.-00, overruled Missouri Pacific's amended motion for new trial, and Missouri Pacific has appealed to this Court. Appellant attacks the judgment of the trial court by 31 points of error, grouped and collected as 10 propositions, each of which appellant relies upon for reversal of the judgment below.

At the time of trial on January 19, 1967, Sparks was 68 years of age. He testified that he went to work for Wells Fargo in 1916 as a joint train baggageman and messenger, working on board the Southern Pacific run between Hearne and Giddings. During World War I, Wells Fargo was consolidated into American Railway Express and later the name was changed to REA Express. In his alleged capacity as a joint train baggageman and messenger, Sparks has worked on the Santa Fe, Southern Pacific and Missouri Pacific railroad companies. He testified that in 1931, he went to work as a joint train baggageman and messenger with Missouri Pacific and worked on that line, although on several different runs, until he took his retirement in 1963, following the injury made the basis

of this lawsuit. At the time Sparks received the injury of which he here complains, he was in the process of lifting a bag of mail on board Train 50 of the Missouri Pacific run from Houston to Baton Rouge, Louisiana. Sparks was lifting a bag of bulk mail in order to stack it in a doorway so that it could be unloaded at Baton Rouge, when he felt a burning or stinging sensation in the area of his groin, followed by a bulging. His condition was subsequently diagnosed as left inguinal hernia with an indirect inguinal hernia extending into the cord structures. He was operated on and the hernia was found and repaired, and the left testicle was removed. The operation took place on February 5, 1963, and following that Sparks remained off work for some three months. He testified that he continued to have a shooting pain in his left leg, and after his return to work, he felt a strain on his left leg. He quit work on August 30, 1963 after many years work as a joint train baggageman and messenger. He subsequently was employed as a school patrolman. Trial was almost four years after the date of injury.

The trial court submitted four groups of liability issues to the jury. Each issue was answered in favor of appellee. Special Issues 7, 8 and 9 inquired whether just prior to the occasion made the basis of this suit, the train on which the plaintiff was working made a sudden jerk; whether such action was negligence; and whether such negligence, if any, was a cause in whole or in part of the plaintiff's injuries. But in a sudden stop or slowing situation, the plaintiff must prove more than the mere fact that the train jerked or slowed. There is nothing in the record to show why the train jerked or slowed, whether there was reason for it, whether there was an emergency, or whether the jerking or slowing was unusual or extraordinary. There must be some evidence of appellant's negligence in a F.E.L.A. case, and the instant jerking or slowing is without any standard by which ordinary care can be measured. Herdman v. Pennsylvania Ry. Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508; New York, New

Haven etc. v. Henagan, 364 U.S. 441, 81 S. Ct. 198, 5 L.Ed.2d 183; Fort Worth & D.C. Ry. Co. v. Bell, 14 S.W.2d 856 (Tex.Civ. App.), err. ref; Taber v. Smith, 26 S.W.2d 722, 725 (Tex.Civ.App.), no writ; 40 Tex. Jur.2d, Sec. 37, p. 502. We sustain appellant's related points of error, and we hold that the sudden jerk under the facts without supporting proof, cannot form the basis for liability of Missouri Pacific.

Appellant complains that the three remaining groups of issues submitted to the jury which inquired as to a safe place to work, furnishing sufficient employees, and furnishing sufficient equipment, were each general and global issues, and that they were not specific enough to comply with Texas law, under the authority of Barclay v. C. C. Pitts Sand & Gravel Co., 387 S.W.2d 644 (Tex.Sup.); Roosth & Genecov Production Co. v. White, Inc., 152 Tex. 619, 262 S.W. 2d 99 (Tex.Sup.); Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517, and similar authority. In Great Atlantic & Pacific Tea Co. v. Coleman, 259 S.W.2d 319 (Tex.Civ. App.), no writ; Texas & N. O. R. Co. v. Pool, 263 S.W.2d 582 (Tex.Civ.App), no writ; and Panhandle & Santa Fe Ry. Co. v. Arnold, 283 S.W.2d 303 (Tex.Civ.App), writ ref., n. r. e. (on remand 305 S.W.2d 207), Texas Courts of Civil Appeals have held that the issue inquiring whether a place was a reasonably safe place to work is a general one and is insufficient to impose liability against a defendant. In the case of Missouri Pacific Ry. Co. v. Prejean, 307 S. W.2d 284 (Tex.Civ.App.), no writ, the contrary seems to have been held by the Houston Court of Civil Appeals (First District). The Arnold case above, on certiorari to the United States Supreme Court, was reversed and remanded to the Amarillo Court of Civil Appeals, and a recovery was allowed the F.E.L.A. plaintiff in that case, the Supreme Court of the United States saying:

" * * * [T]he assertion of Federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 1441.

■ In the Arnold case, the Texas court had held that a general finding that the railroad failed to furnish plaintiff with a safe place to work cannot stand in the face of specific findings exonerating the railroad of any negligence proximately causing plaintiff's injuries. In Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111 (1957), the Texas Supreme Court reaffirmed the position that where an F.E.L.A. suit is brought in a Texas state court, the Texas Rules of Civil Procedure control, and thus Rules 277 and 279 are applicable to special issues and the submission of specific issues of fact to a jury in a Texas state court. See 38 Tex. Jur.2d, Sec. 202, pp. 434–435 . Moreover, the majority sees no reason for the defeating of federal rights by a requirement that specific issues of fact be submitted to the jury under Texas procedural law. In view of the Robbins case, the majority feels that we are bound by the Texas rule as to the submission of special issues, and we accordingly follow that case. We hold that general or global issues cannot correctly be submitted to the jury, over proper objections, in a negligence case, including F.E.L.A. cases.

■ We do not, however, consider Special Issue No. 3 to be sufficiently global or general or that it should be stricken down under the above rule. The special issue was submitted as follows:

"SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the Defendant Missouri Pacific Railroad Company, Inc., on or about the 25th day of January, 1963, failed to furnish the Plaintiff as many employees to help Plaintiff in the work he was doing on the occasion made the basis of this suit as would have been done by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances?"

"We do."

The issue simply asked the jury whether Missouri Pacific's failure to furnish sufficient employees to help plaintiff on the oc-

casion in question was a failure to exercise ordinary care under the circumstances. The real question here presented is the sufficiency of the evidence to sustain the jury's answer to that issue. Sparks testified that mail helpers were supplied through request to the railroad. He further testified that he had requested the Missouri Pacific trainmaster to provide additional help, because the mail had continuously increased and the trains were running faster. He could not name the particular officials of Missouri Pacific to whom his requests were made for more help, but we believe he properly identified them. The officials were on the train or at the stations. He made one request for more help in November, 1962, before his injury in January, 1963. The mail and baggage duties were Missouri Pacific business, and he was paid five cents per hour for handling baggage. He made requests for help to REA and Missouri Pacific, and the record shows that he worked for both of them. If the business was express, he requested it through the express company. He was required to handle heavy canvas bags, some as heavy as 100 pounds. He would lift the bags and stack them, and he would drag them in the cars by a rope or by a metal label. The stopping and irregular movement of the train was something he always had to guard against. Mr. Walker, an employee of Missouri Pacific as assistant general manager, told Sparks that he was delaying the train and that he had to hurry and throw the mail back to get the train out.

There is ample evidence in the record to show that Sparks was confronted with many problems in handling baggage and mail and in getting it lined up for delivery to various stations between Houston and Baton Rouge; that he was required to hurry constantly and that by reason of the increased mail and baggage and the speed of the trains, the jury had the right to believe that the job was too difficult for one man. It will be recalled that Sparks was injured in an attempt to lift a 50-pound bag of mail to put it in the stack of mail at the car door.

The evidence is sufficient for the jury to make a finding of negligence on Special Issue No. 3, and to make a finding on Special Issue No. 4 that the failure to furnish help for Sparks was a cause in whole or in part of the injury he sustained. The railroad was put on notice repeatedly, according to Sparks' testimony, that he needed help and that the mail was increasing and the job was becoming too difficult for one man. While it might be said that the particular act he was performing at the time of the injury had no relation to whether another workman was helping him, the jury had the right to take the opposite view, since the constant hurrying and straining required to handle and line up the mail and baggage placed too great a burden on him on a trip from Houston to Baton Rouge or New Orleans. The jury was not engaged in mere speculation, but was drawing a reasonable inference in reaching the conclusion that Missouri Pacific's failure to furnish a helper was a factor in bringing about the injury to a man who was five feet four inches in height and who had been partly crippled by Polio. The strain of the fast and hurried work on the train and the constant lifting of heavy bags were such that an injury of the type plaintiff sustained might reasonably have been anticipated as the result of failure to furnish sufficient help. The question of negligence was for the jury, and we must sustain the jury's findings if there is any evidence to support them. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352; St. Louis Southwestern Ry. Co. of Texas v. Gillenwater, 284 S.W. 268 (Tex.Civ.App.), affirmed, 294 S.W. 193; Loud v. Sears, Roebuck & Co., 262 S.W.2d 548 (Tex.Civ.App.), no writ. The defense of assumption of risk is not available to the defendant in a F.E.L.A. case. 45 U.S.C.A., Sec. 54; see and compare 38 Tex.Jur.2d, Sec. 157, p. 366.

It must be noted that federal courts have broadened the jury's function in F.E.L.A. cases so that very little evidence is required to uphold a jury verdict of negligence. Robinson v. Gulf, Colorado & Santa Fe Ry. Co., 325 S.W.2d 432 (Tex.Civ.App.),

error ref. And proximate cause in its usual sense is not applicable in a F.E.L.A. case, the test being whether the injury was caused in whole or in part by the defendant. Rogers v. Missouri Pac. Ry. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

Appellant attacks the finding of the jury that Jake Sparks was an employee of the Missouri Pacific. The claim is that Sparks was an REA employee, paid by REA and under its control. The evidence shows that the express company did employ Sparks and that his personnel records were in its custody. His general orders were usually given by REA. The plaintiff testified, however, that he was a joint baggageman and messenger, handling express for REA and mail and baggage for Missouri Pacific. This testimony was never refuted by the railroad, nor was any evidence produced which tended to show that Sparks was not under the railroad's right of control in the handling of railroad baggage and U.S. mail. He testified that he made mail and baggage reports to the railroad, and that the railroad employees directed his work in connection with mail and baggage; that he was paid extra for handling mail and baggage, and that the pay came from Missouri Pacific, who paid REA for his work. Plaintiff took directions from railroad employees and made complaints to them. He testified that he held his seniority with the Railway Express Agency through the Brotherhood of Railway Clerks, Steamship, Freight Handlers and Express Employees union. But he testified that he answered to a Mr. Watson, general baggage agent for Missouri Pacific, and was directed and controlled by him and other railroad officals on all matters concerning mail and baggage.

■ A plaintiff has the burden of proving the relationship of master and servant and that he was engaged in the master's business when he was injured. Galveston H. & S. A. Ry. Co. v. Wells, 121 Tex. 310, 50 S.W.2d 247; 38 Tex.Jur.2d, Sec. 219, p. 456; 56 C.J.S., "Master and Servant," Sec. 175. Where the evidence on the relationship of master and servant is conflicting, the issue should be submitted to a jury. Esthay v. Sherman, 135 S.W.2d 174 (Tex. Civ.App.), writ dismd., judg. correct. And the employee may testify as a witness to the fact of employment. Gibson v. Gillette Motor Transport, Inc., 138 S.W.2d 293 (Tex. Civ.App.), error ref.; Cook v. Hamer, 158 Tex. 164, 309 S.W.2d 54, 58. The fact that one performs personal services for another for an agreed compensation carries with it the presumption of the right of control by the employer or beneficiary of the services, and the burden is then upon the alleged employer to show that the relation of master and servant did not exist. Gibson v. Gillette Motor Transport, Inc., supra; Taylor B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868, 870.

■ The plaintiff called as a witness H. D. Huffman, assistant general manager for Missouri Pacific, Gulf District, in an attempt to further clarify the nature of Sparks' employment. Mr. Huffman had been subpoenaed by plaintiff to bring with him records pertaining to the contractual relationship between Missouri Pacific and the Railway Express Agency, and matters pertaining to Sparks' employment. Mr. Huffman's testimony was evasive, and he stated that any records pertaining thereto were kept in the St. Louis office of the company, and that he could not produce them. It is clear that there was some arrangement between the two companies, but the railroad could not or would not produce evidence of any such arrangement or contract which might limit Sparks' employment and authority or add to it. We must therefore assume that any agreement between REA and Missouri Pacific would have been of no benefit to Missouri Pacific. See McCormick & Ray, Texas Law of Evidence, Sec. 103. In Illinois Central R. Co. v. Johnston, 205 Ala. 1, 87 So. 866, 874 (1920), cert. denied, 254 U.S. 654, 41 S.Ct. 218, 65 L.Ed. 459, err. dismd. 255 U.S. 564, 41 S.Ct. 375, 65 L.Ed. 788, a case involving a baggage-

master and express agent, and a case very similar to the case at bar, it was said:

"It cannot be doubted that some officer, agent, or employee of the railroad company was charged with the duty of employing or arranging for the employment of baggagemen for its trains—the work which plaintiff was doing at the time of the injury—and yet not a single employee of the defendant was called to testify on this subject, and no contract, rule or other documentary evidence was offered on the trial to shed light on this question. The defendant was content to rest this aspect of its case on the testimony of the two agents of the express company, who were shown to have no knowledge of the business arrangement between the express company and the railroad company, if such there was, under which the plaintiff was doing the work and performing the duties of baggagemaster for the defendant."

We believe the evidence is ample and sufficient to show that the plaintiff was a servant of Missouri Pacific, and that his injuries were received while he was performing services for defendant, who had the right to control his activities at the time. Illinois Cent. Railroad Co. v. Johnston, supra; B. & O. R. R. Co. v. McCamey, 5 Ohio Cir.Dec. 631; 56 C.J.S. Master and Servant § 179, p. 867; Gibson v. Gillette Motor Transport, Inc., supra. And see Missouri, K. & T. Ry. Co. of Texas v. Reasor, 28 Tex. Civ.App. 302, 68 S.W. 332 (Tex.Civ.App.), error ref., a case involving a joint baggageman and messenger. We overrule appellant's points of error in this connection.

The trial court submitted unavoidable accident in the following language:

"Do you find from a preponderance of the evidence that the incident in question was proximately caused by the negligence of any party to it?"

Answer: "We do."

In Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 385, it was held that unavoidable accident should be defined as an event not proximately caused by the negligence of any party to it. In our opinion, it is unnecessary to use the language "unavoidable accident" in a special issue if the issue factually includes the definition, and if the jury makes findings on facts which make up the defense. The jury having made findings upon facts which show that the incident was proximately caused by the negligence of one of the parties to the event, we hold that submission of the above issue was proper. See Wheeler v. Glazer, 137 Tex. 341, 153 S.W. 2d 449, 452, 140 A.L.R. 1301; 40 Tex.Jur. 2d, Sec. 172, p. 718.

The appellant contends that the damages awarded by the jury were excessive. The plaintiff testified that he was in constant pain and when he moved his body it would become worse. He testified that when he returned to work following the hernia operation, he experienced shooting pains in his left leg which seemed to originate in the groin. The post-operative findings showed a small sac indirect inguinal hernia extending into the cord structures. The record showed a left inguinal hernia, both direct and indirect, which we take to mean that the hernia was pushing downward as well as outward. His testimony was clear that the accident made the basis of this suit caused severe pain and mental anguish. In recovering from the hernia operation, plaintiff was off work for a period of three months, and when he returned to work, he noticed the strain that was being placed upon his left leg, and that the work was harder for him to perform. Plaintiff quit work on August 30, 1963, and at the time of the trial, he earned $225.00 per month while working as an elementary school patrolman. The jury was entitled to take into consideration the differential in wages, which at $200.00 per month for a period of about four years could amount to more than $9,000.00. The trial court's

charge did not include an item of damages unsupported by the evidence, since some lost wages were properly proven. Under the facts of this case and in the absence of hospital records which have not been brought forward to this court, we are not inclined to order a remittitur. The damage finding was exclusively within the province of the jury. See Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835.

The trial court charged on physical pain and mental suffering from the time of injury to the date of trial, and the present reasonable cash value of the loss of earnings from date of injury to the date of trial. No exclusionary instruction was requested concerning the removal of the testicle and other matters apparently included in the medical records, under Rule 274, T.R.C.P. We hold the evidence sufficient to support the judgment. See Applebaum v. Michaels, 384 S.W.2d 148 (Tex.Civ.App.), ref., n. r. e.; McGraw v. Monongahela Connecting Railroad Co., 285 F.2d 731 (3rd Cir. 1960); Robinson v. Ashner, 357 S.W.2d 611, 614 (Tex.Civ.App.), Affd. 364 S.W.2d 223 (Tex.Sup.).

We have considered all points of error made by appellant, and we find no reversible error. Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.

### Concurring Opinion

TUNKS, Chief Justice.

I concur in the result reached by the majority. I am, however, of the opinion that the "safe place to work" issue as submitted by the trial court was in proper form. Arnold v. Panhandle & Santa Fe Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 1441; Continental Oil Co. v. Lindley, Tex.Civ. App., 382 S.W.2d 296, ref. n. r. e.; Missouri-Pacific Railroad Co. v. Prejean, Tex. Civ.App., 307 S.W.2d 284, no writ history.

### On Motion for Rehearing

BARRON, Justice.

Appellant's motion to bring forward certain exhibits including hospital and medical records pertaining to appellant's injuries, has been granted by the court. We have examined each exhibit and considered them in connection with the record.

We do not believe the verdict of the jury is excessive considering the evidence in its most favorable light for appellee and we decline to order a remittitur. The amount of damages is generally a troublesome and vexing question.

The motion for rehearing is respectfully overruled.