**PORT TERMINAL RAILROAD ASSOCIA-
TION, Appellant,**

v.

**Jerry R. FONTENOT, Appellee.**

**No. 504.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

June 23, 1971.

Rehearing Denied July 14, 1971.

William H. Tenison, Jr., Andrews, Kurth, Campbell & Jones, Houston, for appellant.

Tom R. Letbetter, George Payne, Garrett & Letbetter, Houston, for appellee.

BARRON, Justice.

This action was brought by plaintiff, Jerry R. Fontenot, appellee here, under the Federal Employers' Liability Act (45 U.S.C.A., Sections 51 et seq., as amended) for damages resulting in personal injuries to said plaintiff while he was employed as a switchman by defendant, Port Terminal

Railroad Association, appellant in this court.

In answers to special issues the jury found that Port Terminal Railroad Association was negligent in four specific acts or omissions, each of which was a proximate cause of the accident and injuries to Fontenot. The jury, however, found that Fontenot failed to keep a proper lookout for his own safety and that such failure was negligence and a proximate cause of the accident. On the comparative negligence issue as to lookout, the jury found that appellee's negligence amounted to 12½% of the whole. On the damage issues the jury found that the total amount of damages for physical pain, past and future; mental anguish, past and future; loss of earnings in the past and diminished capacity to work and earn money in the future was $100,000.00. The jury also assessed as damages the sum of $2,000.00 for necessary past and future medical costs and expenses. Judgment was rendered in the trial court in favor of appellee in the sum of $89,031.25, pursuant to the verdict of the jury. Appellee had filed a remittitur in the sum of $250.00 in regard to future medical expenses.

The railroad association has brought forward two points of error, to-wit: the alleged error of the trial court in failing to order a mistrial when appellee's attorney brought before the jury hearsay testimony which was calculated to lead the jury to believe that appellant's lawyer and a woman detective were attempting to have appellee fired from his current job as a truck driver because of his prosecution of this lawsuit; and the alleged error of the trial court in refusing to grant a remittitur where damages for pain and suffering, mental anguish and lost wages in the amount of $100,000.00 were excessive.

The accident in question occurred on or about July 21, 1968, at which time appellant was doing business as an interstate common carrier of freight for hire by railroad. At the time appellee received his injuries he was attempting to mount a moving tank car. Appellee testified that in the early morning of July 21, 1968 his leg was hit on a switch while he was working on the Rohm & Haas job east of Deer Park, Texas. He had put his left foot in a stirrup on the car and shortly thereafter he let his right leg swing around, and he struck the switch with his right leg. The switch stand was owned and maintained by Rohm & Haas Company. Appellee's particular physical complaints involve his right leg and particularly his right knee.

■ Relative to the first point of error above, appellee's attorney asked appellee whether he had had some indication that he would be fired from his present job as a truck driver. The appellee's answer was "Yes, Sir." On objection by appellant's counsel the same was sustained. Pursuing a similar line of questioning regarding appellee's personal knowledge, appellee stated that the terminal manager told him that it was a lawyer and a woman detective who were involved in such transaction. Appellant's counsel again objected, and the jury was dismissed from the courtroom. Appellant's counsel objected on grounds of hearsay and moved that the court declare a mistrial by reason of the alleged damaging and incurable effect of such testimony in the presence of the jury. The trial court sustained the hearsay objection but denied appellant's motion for mistrial. When the jury was recalled the trial court instructed the jury as follows:

"Ladies and gentlemen of the jury, the last statement of the witness (Fontenot), with reference to a lawyer and/or a detective shall be entirely disregarded by you. It may not be considered as evidence of any kind in this case. It is hearsay. Inadmissible. It shall be disregarded.". (Parenthesis added).

After the trial court's instruction, appellee never again alluded to the matter complained of and fully complied with the trial court's ruling thereon. Appellant contends that the instructions above given to the

jury to disregard the objectionable questions and answers were insufficient to erase from the minds of the jury the alleged damaging testimony of the witness Fontenot. In an extended trial of this type, some error will ordinarily occur at some point. We have considered appellant's contention and have concluded that in view of the trial court's careful instructions to the jury, and the presumption that the jury obeyed the instructions of the trial court, no reversible error is shown. We overrule appellant's first point of error. See Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277; Brock v. Graham, 321 S.W.2d 593, (Tex.Civ.App.), no writ; Rule 434, Texas Rules of Civil Procedure.

▮ Appellant further contends that the trial court erred in refusing to grant a remittitur and calls upon this Court to order the same by reason of the alleged gross excessiveness of the $102,000.00 verdict. The fact that this case was tried in a state court means little when sufficiency of the evidence is concerned. We must determine the questions of negligence, causation and generally the sufficiency of the evidence to support the verdict by applicable federal law and decisions. Port Terminal Railroad Association v. Ross, 155 Tex. 447, 289 S. W.2d 220, 226; Hullum v. St. Louis Southwestern Railway Company, 384 S.W. 2d 163, 172, (Tex.Civ.App.), writ ref., n. r. e.; Missouri-Pacific Railroad Company v. Prejean, 307 S.W.2d 284, 287, (Tex.Civ. App.), no writ. And federal courts have broadened the jury's function in F.E.L.A. cases so that very little evidence is required to uphold a jury verdict. Robinson v. Gulf, Colorado & Santa Fe Ry. Co., 325 S.W.2d 432, 435, (Tex.Civ.App.), writ ref.; Missouri Pacific Railroad Company v. Sparks, 424 S.W.2d 12, 16, (Tex.Civ.App.), writ ref., n. r. e.

At the time of the trial, appellee was approximately 31 years of age with an average life expectancy of about 40 years.

After the above leg injury, appellee experienced considerable trouble with a large baseball-sized knot on his injured limb. He went to East End Medical Clinic where Dr. Diamonon made an incision in appellee's leg and removed clots of blood and other matter that contributed to the swelling. He continued to have problems with the leg and his condition worsened to such extent that he had to see Dr. Diamonon about twice a week. Appellee also saw Dr. Braastad at East End Medical Clinic, and this doctor advised him to go back to work. About three days after being advised to return to work, he became ill and noticed red streaks running up his leg toward his groin. He immediately entered St. Joseph Hospital under the care of Dr. Diamonon. He was there treated with antibiotics and soaks to control the infection. The wound was once again opened and dead tissue surrounding the injury was removed. Appellee was referred to Dr. Sharkey, a neurosurgeon, to whom he complained about a problem in the area of his knee joint. Finally, in January, 1969, Dr. Bruce Cameron performed surgery on appellee at St. Luke's Hospital in Houston, Texas. Prior to the operation, appellee experienced soreness in the joint, frequent pain, stiffness and swelling in the knee joint, and the giving away or collapsing of his knee under his own body weight. His recovery at St. Luke's Hospital was the most painful experience he had ever undergone. He was on crutches for three weeks or more after leaving the hospital. Between the time of his initial injury and the January, 1969 surgery, appellee had attempted to do loading work for Chemical Express and also some railroad work, but he had experienced great difficulty in performing his duties because of problems with his leg. Appellee also missed two months' work in 1968 due to this injury. His present employment as a truck driver heavily burdens his right leg, since he must use it for braking, acceleration, and climbing about on top of trucks which he is supervising in regard to unloading. He has often been

forced to stop and rest his leg because it goes to "sleep" or it cramps.

Appellee's educational background is limited to a high school equivalency certificate, and he has worked only as a laborer during his adult life. The initial blow which caused the injury was so severe that the injury to the leg or the impact alone almost knocked him from the railroad car upon which he was riding. After his return to railroad employment, which he could hold for only a short time, he was forced to receive assistance on the job from fellow workers in order to do his work. Mrs. Fontenot testified that even though he was given medication during his stay in the hospital, he still experienced great pain as a result of the operation. His wife further testified that appellee cannot sleep over two hours soundly because of pain in his leg, and that his knee often fails or "goes out" on him when he walks across the floor. She had noted no improvement in appellee's condition in the six months prior to date of trial. Other lay witnesses corroborated many of the facts outlined above.

Dr. Bruce Cameron testified that appellee's thigh measured an inch and one-half smaller on the affected side, and that this objective finding usually meant that the knee was sore and the muscle was not working as well, which would cause it to wither. Forced extension of the knee was painful, and tenderness was noted over the medial meniscus along the joint margin. Dr. Cameron also detailed other objective findings indicating a torn cartilage in appellee's knee. Surgery performed by the doctor was for the purposes of opening up the knee and removing the torn cartilage. During surgery it was observed that the front cartilage had worn down badly and was loose. There was a tear in the back one-third of the cartilage, and the cartilage was dissected and removed. Dr. Cameron also noted that infection, such as that suffered by appellee, could ruin a joint. Appellee was unable to return to work for some time after surgery. Examination about one month prior to trial indicated that he was still having considerable knee trouble and that another operation, a pesplasty, might be of benefit in helping to stabilize the injured joint. Dr. Cameron also testified that a study had shown that among high school athletes who had experienced knee trouble, about 60% of them would have a considerable amount of disability in their knees within twenty-five years. The doctor estimated appellee's disability at 20 to 25 percent, based upon the fact that the operation gave him a 15% disability because of scarring in the knee, and the fact that over the course of a day's work the stiffness and progressive traumatic arthritis, which would probably result from working a normal period of time, would disable appellee to this extent when compared with persons who had normal knees. Dr. Cameron stated that in reasonable medical probability traumatic arthritis in the joint would result after an injury of this type followed by surgery. The doctor stated that the condition which appellee has is permanent.

We have carefully considered the injuries of appellee in connection with the six elements of damages submitted to the jury by the trial court, and we consider the award in this case to be most generous even though the nature of the case, Federal Employers' Liability, enacted by Congress, is one where we are required to apply a somewhat liberal rule concerning the sufficiency of the evidence to support the jury's verdict. However, considering the life expectancy of appellee; the fact that the nature of his injury would necessarily preclude his returning to his original employment; the natural disabling features of a major joint injury (the knee); almost never being capable of full restoration; and the probability that pain and suffering will occur throughout the life of appellee, we believe the evidence supports the verdict of the jury in this case. This type of injury is one which is likely to worsen gradually in the future and materially curtail appellee's general activities. A person

who uses his physical body in order to earn a living is likely to be under a major handicap for the remainder of his life with injuries such as the evidence shows in this case.

 The evidence viewed in its most favorable light for appellee barely supports the award of the jury based upon a logical and permissible calculation of the six damage elements. The fact that a person continues to work after being seriously injured does not preclude a recovery of substantial damages for his diminished capacity to work and earn money. The liberal policy in F.E.L.A. cases is generally demonstrated by the action of the United States Supreme Court in its reversal of a judgment of the Court of Appeals for the Second Circuit in the recent case of Grunenthal v. Long Island Railroad Company, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). In that case the injury was greater and the damages were greater, but that liberal rule is applicable here. In that case the jury awarded $305,000.00 for a serious foot injury. The Court of Appeals ordered the District Court to grant the railroad a new trial unless the injured employee would agree to remit $105,000.00 of the award. The U. S. Supreme Court held that the judgment of the Court of Appeals be reversed, and that the judgment of the District Court awarding $305,000.00 be affirmed. See also Movible Offshore Company v. Ousley, 346 F.2d 870, (5th Cir. 1965); St. Louis Southwestern Railroad Company v. Williams, 397 F.2d 147, (5th Cir. 1968). And see Bluebonnet Express, Inc. v. Foreman, 431 S.W.2d 45, (Tex.Civ. App.), no writ; Port Terminal Railroad Association v. Macaluso, 450 S.W.2d 873, (Tex.Civ.App.), no writ. We therefore feel that the claimed requirement of a remittitur in this type of case under the evidence as summarized above would be improper in the face of the verdict of the jury and the judgment of the trial court.

Appellee's cross-points of error regarding failure to keep a proper lookout by

Fontenot and proximate cause on grounds of no evidence have been considered, and in view of the evidence as stated they are overruled.

For the reasons above, the judgment of the trial court is affirmed.