579 S.W.2d 527 (1979)
In re B_____ S_____ L_____ and R_____ A_____ L_____, Minor Children, Appellants.
No. 16055.
Court of Civil Appeals of Texas, San Antonio.
March 14, 1979.
Rehearing Denied April 18, 1979.
*528 John A. Mead, San Antonio, for appellants.
Benjamin F. Walker, San Antonio, for appellee.

OPINION
CADENA, Chief Justice.
Respondent, mother of the two minor children involved in this case, seeks reversal of an order removing her as managing conservator of the children and appointing appellee, respondent's former husband and father of the minors, managing conservator.
Petitioner and respondent were divorced on July 30, 1976. The divorce decree named respondent managing conservator of the children, and petitioner thereafter filed this proceeding seeking modification of the custodial portions of the prior decree.
Respondent first complains of the exclusion of testimony which related to a "suicide attempt" by petitioner and an incident which involved the damaging of a china cabinet by petitioner. Both events occurred prior to the divorce.
In Wilson v. Elliott, 96 Tex.472, 73 S.W. 946 (1903), the Supreme Court of Texas said that a prior decree awarding custody of children to the father established that the father was a proper person to have custody of the children on the date of such decree and that such judgment was "res adjudicata." The Court added:
The question upon the first trial in a case of a character of this is, which is the more suitable party to be intrusted with the care of the child at that time? The question in the subsequent proceeding is, which is the more suitable at the time of that trial? Since, in determining the second question, the first can not be agitated, it follows that evidence of prior conduct of either party cannot be introduced except to corroborate some evidence of similar conduct ... since the original decree.
96 Tex. at 477, 73 S.W. at 947. A similar statement is found in Otto v. Otto, 438 S.W.2d 587, 589 (Tex.Civ.App.San Antonio 1969, no writ).
We accept respondent's statement that, with the exception of Green v. White, 203 S.W.2d 960 (Tex.Civ.App.El Paso 1947, no writ), all the cases which applied the exclusionary rule announced in Wilson concerned evidence of prior misconduct of the person to whom custody was awarded by the prior decree. Respondent points out that in Green the court said that it had found no case "authoritatively holding that the status or character of the parent to whom custody was not awarded in a suit *529 for divorce is res adjudicata, and that proof of his or her misconduct prior to the original judgment is inadmissible in a subsequent proceeding for custody." 203 S.W.2d at 962. This inability to find an authoritative holding resulted from the fact that the Green opinion characterized as "dicta" the statement in Wilson that prior conduct of either party is inadmissible. Id. This denunciation of the Wilson language as dicta was based on the theory that in Wilson testimony of the prior conduct of both parties was admitted and the only question was whether the trial court erred in disregarding such testimony. This observation led to the conclusion that the question of the admissibility of such testimony was not considered in Wilson.[1] However, the Green opinion concludes that the Wilson "dicta" was unequivocal, persuasive, and binding on intermediate appellate courts "until the Supreme Court holds otherwise." Id. at 962. The evidence of misconduct by petitioner antedating the original custody decree was properly excluded.
The next complaint concerns the exclusion of certain testimony of the witness, Sandra Martin. According to the bill of exceptions, this witness would have testified that she recommended that the prior decree appointing respondent managing conservator not be disturbed. Petitioner objected to such testimony on the grounds that the witness was not qualified to express an opinion on that subject and that the proffered testimony "goes to the ultimate issue of the facts which the jury is called upon to decide." The court excluded the testimony, explaining that the evidence was inadmissible for the reasons stated in petitioner's objection and for the additional reason that the recommendation was based on hearsay.
The witness was permitted to testify that the court had directed that a social study be made by the Children's Service Bureau, by whom the witness was employed, and that the witness had made such a study. She was also allowed to state that she had visited the homes of both parties and had talked with the children, respondent's parents, persons acquainted with petitioner, the fire marshal and health authorities. She testified that she found no conditions in either home which could be considered injurious to the well-being of the children.
The testimony of the witness concerning her qualifications may be summarized as follows: (1) At the time of trial she was employed by the Children's Service Bureau in San Antonio as an adoption case worker. The record does not indicate how long she had been so employed. (2) She graduated from Northwestern State College in Louisiana with a bachelor's degree in elementary education in 1966. (3) She was a first grade teacher in Louisiana and subsequently was a teacher in a program for the education of deprived children in Alabama and special education programs in Alabama and New Hampshire. (4) In 1975 she returned to school and earned a master's degree in "Family Relations and Early Childhood Development." The record reveals neither the name of the institution nor the content of the program leading to the master's degree. (5) Her employment with the Children's Service Bureau requires that she "study *530 families, investigate their homes and possibly recruit families for the adoptive placement of children."
No hard and fast rules have been developed to help in determining whether a person who is tendered as an expert witness has qualifications sufficient to permit him to give opinion evidence on a particular matter. It is generally held that the question of qualifications of a witness is a matter entrusted to the discretion of the trial court and that the trial court's ruling will be disturbed only in a case of clear abuse. 2 C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE § 1401, at 235 (2d ed. 1956). We cannot say that the trial court abused its discretion in excluding the testimony in question. It cannot be said that experience as a first grade teacher or participation in programs for deprived children and "special education programs" of itself qualifies a person to evaluate environments, attributes and personalities of parents and children and other circumstances which must be considered in determining what may be for the best interest of children in custody disputes. There is no evidence indicating the length of the employment of the witness by the Children's Service Bureau, the number of investigations she has made and the extent to which she has gained a measure of expertise in any special area as a result of studying families, investigating homes and "possibly" recruiting families for the adoptive placement of children.
Respondent's third point on jury misconduct is likewise without merit. Respondent was cross-examined concerning an incident that occurred at the Comic Strip Lounge, which she described as a "bar" and "place for entertainment." After she testified that she had taken her daughter there one night, she denied that the lounge could be classified as a "rough" place unsuitable for children. Counsel for petitioner then obtained an admission from her to the effect that on the night she was there with her daughter a man had been killed in the lounge. No objection was made to this line of questioning.
On redirect examination respondent testified that the incident at the bar had taken place prior to the time she divorced petitioner. The trial court then asked counsel to approach the bench and, after an off-the-record discussion, the court instructed the jury to disregard all testimony concerning the presence of respondent at the lounge. Respondent insists that the trial court erred in not declaring a mistrial. At no time did respondent move for a mistrial. She did not object to the testimony or request that the jury be instructed to disregard it, although it might, perhaps, be assumed that such an objection and request would have been made had the trial court not acted on its own motion. The record does not support respondent's assertion that the trial court stated that no mistrial would be granted. Neither does the record support the conclusion that the error, if any, in admitting evidence concerning the lounge incident probably resulted in an improper verdict. There is a presumption that the jury obeyed the instructions of the trial court and did not consider the testimony in question. We find nothing in the record which justifies a holding contrary to such presumption. In fact, the evidence introduced during the hearing on the motion for new trial supports the conclusion that the lounge incident was mentioned only once by one juror who was promptly rebuked and admonished by the foreman and at least one other juror. The incident was not mentioned again during the jury's deliberations. The record, therefore, supports the conclusion that the jurors obeyed the instruction to disregard. See Port Terminal Railroad Ass'n v. Fontenot, 469 S.W.2d 299 (Tex.Civ. App.Houston [14th Dist.] 1971, no writ).
Respondent lastly contends that jury misconduct also occurred during deliberations when one juror discussed a fact within her own personal experience. Petitioner had testified that he believed that the fact that respondent was cohabiting with a man was "bad" for the children. On cross-examination he denied that he had cohabited with his present wife prior to their marriage. When asked why he and his present wife had a joint bank account before they *531 were married he replied that since they were going to get married they decided to open one joint bank account. On the hearing on the motion for new trial one of the jurors testified that during deliberations a juror stated that she worked for a bank and that it was not unusual for an engaged couple to open a joint bank account. Even assuming that the fact that persons contemplating marriage often open joint accounts prior to the marriage is not a fact within common knowledge, we are not persuaded that the isolated mention of such practice probably resulted in an improper verdict.
The judgment of the trial court is affirmed.
NOTES
[1] The distinction which forms the basis for branding the Wilson language as dicta is difficult to accept. The opinion of the Supreme Court was in answer to a certified question inquiring whether the trial court had been correct in refusing`to consider testimony of the prior conduct of both parties. The Supreme Court expressly held that the trial court correctly refused to consider such evidence. It did not hold that the trial court properly refused to consider evidence of the prior misconduct of the custodial parent but had erred in refusing to consider evidence of the prior misconduct of the noncustodial parent.

If the trier of fact is precluded from considering certain testimony, without reference to its credibility, then the admission of such testimony is an exercise in futility. To speak of admissible testimony which must be disregarded is to speak nonsense. If the distinction in Green is sound, it would follow that a court may properly instruct a jury to disregard admissible testimony. We know of no case so holding. If, in deciding the question of the existence or nonexistence of fact B, the trier of fact is precluded from considering evidence of the existence or nonexistence of fact A, the necessary conclusion is that evidence of the existence vel non of fact A is inadmissible.